Heinemann *v.* Heard.

New trial granted.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham,* P. J., and *Cardozo* and *Geo. G. Barnard,* Justices.]

———————•••———————

## HEINEMANN and another *vs.* HEARD and others.

Where agents abroad are vested with a discretion, both as to quality and price, in making purchases of teas and silks, for their principals in this country, they are not liable for a failure to purchase, without more proof than the mere fact that some purchases were made, during the time, by other dealers, within the limit.

Under such instructions, it should appear that the agents not only could have purchased, but that knowledge of the opportunities of making the purchases was brought home to them, and that their omission to purchase was willful, and not the result of an ordinary degree of discretion and prudence on their part.

APPEAL oy tne plaintiffs from a judgment at the circuit dismissing the complaint.

The plaintiffs were merchants doing business in the city of New York.   In the year 1864, they commenced a correspondence with the defendants, who were merchants in China, and on the 23d of December, of that year, gave them an order to invest £10,000 in "fair cargo Foochow Oolongs," (teas,) "at a price not exceeding 9*d.* sterling

per lb. free on board, packed in half chests; and £5000 in No. 1 re-reeled silk, if possible all white, at 18s. for Cumchuck, or at 16s. for No. 1 Loong Kong or Kow Kong, free on board," in accordance with the terms of a letter of credit of J. S. Morgan & Co., bankers of London, which letter of credit was dated January 10th, 1865, for shipment of property from China to an Atlantic port in the United States, and required the bills to be drawn in China prior to July 1st, 1865, and advice thereof given in duplicate; " such advice to be accompanied by bill of lading filled up to order, with abstract of invoices indorsed thereon, one copy of the same to be sent to Messrs. Dabney, Morgan & Co. of New York, by the ship. The receipt of these instructions and letter of credit was acknowledged by the defendants in a letter dated February 25th, 1865, in which they said they considered it very improbable that they would be able to use the credit for some time, as prices of both tea and silk were so far beyond the limits of their instructions. May 2d, 1865, the plaintiffs again wrote the defendants, saying: " With this, we would authorize you that in case you see no chance of filling our orders, to substitute the Oolongs by fine Moyune teas, either from Canton or Shanghai, the usual assortment of fully fair cargo, at a price of 1s. 7d. sterling per pound, free on board, without freight and insurance; for the Ting Tai 2d. per pound higher. The silk we should like to get, even at a difference of five per cent above our limit." This letter was received in Hong Kong July 7th, 1865, and its receipt acknowledged by a letter dated on the 10th July, 1865, in which the defendants say that the market for Oolongs had not yet opened, and that it was almost too early to be able to predict the course of the markets and the range of prices; that they had endeavored to make contracts for silk within limits, but that dealers were unwilling to make any settlements until they could see the quality of the next crop, which would be shown before long.

On the 2d of March, 1866, this action was commenced against the defendants for the recovery of $85,000, with interest from March 2d, 1866, upon allegations that in the months of June and July, 1865, they could have invested £5000 sterling at the market rates then ruling in the Chinese market, in re-reeled silk, as directed by the plaintiffs' letter of December 23d, 1864, and within the limits and under the conditions therein contained, as the defendants well knew, and could have shipped the same to the plaintiffs as therein directed, but wrongfully omitted and neglected to do so. And that during the month of July, 1865, the defendants could, at the market rates then ruling in the Chinese markets, have invested £5000 sterling of the said credit in re-reeled silk, as directed by the plaintiffs' letter of December 23d, 1864, and within the limits and under the conditions therein contained, as modified by the plaintiffs' letter of May 2d, 1865, as the said defendants well knew, and could have shipped the same to the plaintiffs, as therein directed, but wrongfully omitted and neglected so to do. That in July and August, in the year 1865, the defendants could, at the market rates then ruling in the Chinese markets, have invested the amount of the said credit in *fine* "Moyune teas," as directed by the plaintiffs' letter of May 2d, 1865, within the limits and under the conditions therein contained, as the defendants well knew, and could have shipped the same to the plaintiffs as directed, but wrongfully omitted and neglected to do so.

The defendants filed their answer to this complaint, denying that they could, before the expiration of the letter of credit, have invested the £5000 in re-reeled silk within the limits and under the conditions prescribed by the plaintiffs; or, if such investment could have been made, that they had any knowledge or information that such could have been done; and denying that they could have shipped the same to the plaintiffs at any time during the

period of the alleged letter of credit. The same denial is made in relation to the investment of £10,000 in fine Moyune teas.

The issues raised by the pleadings came on for trial at the New York circuit, on the 5th of May, 1869, before Justice CARDOZO and a jury.

After the counsel for the plaintiffs had closed their evidence—consisting of letters, depositions, circulars, invoices, oral testimony, and *pro forma* statements—the defendants' counsel moved to dismiss the complaint, on the ground that the plaintiffs had failed to make out a *prima facie* case sufficient to go to the jury; which motion was sustained by said justice, who ordered that the complaint be dismissed.

To this decision the appellants excepted, and appealed to the general term.

*W. W. Macfarland,* for the appellants.

*E. W. Stoughton, John E. Ward* and *Wm. S. Dexter,* for the respondents.

*By the Court,* INGRAHAM, P. J. We do not deem it necessary to the disposition of this case to discuss particularly the evidence given on the trial. After an examination of that evidence, we think that some general principles applicable to it will dispose of the questions raised on this appeal.

In regard to the orders to purchase teas, the same were purely discretionary on the part of the defendants, requiring the exercise of their judgment both as to the kind of tea and its quality. The first orders were to purchase Oolongs at a limited price. If desirable purchases of this kind of tea could not be made, the orders authorized purchases of fine Moyune teas, under certain limits as to quality and price. This was as late as May, 1865, and not

Heinemann *v.* Heard.

received till some time thereafter, when the date of the credit was to expire July 1st, although afterwards extended to September 1st, while on the 6th of June 1865, a letter was sent authorizing the first credit not used to be applied for joint account.

We think no other conclusion in regard to this correspondence could be arrived at, except that the intent was to vest in the defendants a degree of discretion, both as to quality and price, in making the purchase, which could not, under the evidence given, render the defendants liable for neglect to obey orders of the plaintiff, without much further proof than can be found in this case.

In regard to the purchases of silks, the same discretion was given to the defendants. In December, 1864, after stating quality and price of silks, the plaintiffs continue: "The selection of silk and tea we leave to your discretion." In May, 1865, they were authorized to ship other grades, at their discretion, which they might consider equally desirable for this market. Such silks as were required had to be ordered for weeks in advance, and the evidence does not show that such silks could have been contracted for before the month of June following, while the limitation of credit expired in July. So also, when the price fell to the limit in June, owing to unfavorable news from Europe, the defendants thought it best to delay purchases on that account until, by the next arrival, news of a reaction had taken place, and the price went beyond the limit. From all the evidence in the case, we think the defendants were vested with a discretion in making purchases, both of silks and teas, which exempted them from liability for not purchasing, without more proof than the mere fact that some purchases were made during the time by other dealers, within the limits.

Under such instructions as were given to these defendants, it should appear that they not only could have purchased, but that the knowledge of the opportunities of

making the purchases was brought home to the defendants, and that their omission to do so was willful, and not the result of an ordinary degree of discretion and prudence on their part. We think the evidence on this branch of the case was insufficint to establish any liability against the defendants.

[FIRST DEPARTMENT, GENERAL TERM, at New York, February 7, 1871. *Ingraham*, P. J., and *Geo. G. Barnard*, Justice.]